**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAY 2 0 2008 *mβ*
Ma Y 20 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Ex parte
Donville James, Ex rel.
    Plaintiff [,]

[V.

UNITED STATES,
    Respondent. ]

)
)
)
)
)
)
)
)
)
)
)

Cause No. 08 C 1416
02 CR 278

Hon. Wayne R. Anderson

**Motion For the Court to Take
Custody of Secret Service
File 1544 and Recording Device
(Ex Parte)**

NOW COMES Movant Donville James, by himself pro-se, and moves this Honorable Court to take Custody of Secret Service File (SSF) 1544, and the recording device that was used to record the recorded evidence in SSF 1544.

## INTRODUCTION

Movant has invoked this Honorable Court's supervisory authorities pursuant to 28 U.S.C. 2106, and in the interest of Justice to take Custody of SSF 1544 and the recording device that was used to record the recorded evidence which are stored in SSF 1544. SSF 1544 and the recording device are paramount to the proper administration of Case Number 08 C 1416 (02 CR 278) which is currently before this Court in the form of a Section 2255 motion.

## THE GOVERNMENT'S POSITION BEFORE THE COURT

The Government in their criminal case against Movant failed to live up to their **Brady's** obligation. The Government had agreed that they would disclose all evidence in their possession which

would include all the evidence in SSF 1544. However, the Government disclosed duplicated copies that were duplicated in violation of the statute governing duplication of evidence, mainly 2518(8)(a), 2517(1), (2) and (3).

The main piece of evidence that would have proven that Movant was innocent of the Government's case against him (the March 25, 2002 CI's body wire) was blank. To account for this blank CD that the Government disclosed, the prosecutors told the Court in their motion that the agent(s) did not turn on the equipment; that in testing "they" were turning the equipment on and off and "they" left it off by mistake.

Movant then filed a motion for the Government to produce the March 25, 2002 tape recorder, which the Government claimed "failed" to record the conversation between the Government's informant and movant. In responding to this motion, the Government told the Court that:

> "Defendant's request to examine the 'tape recorder which failed' should be denied. The tape recorder is actually a digital recorder which burns recorded conversations directly onto a CD-ROM. When the conversations are recorded on the CD-ROM, they are automatically erased from the digital recorder, and the CD-ROM itself becomes the evidence".

The Government continued to tell the Court in their motion that:

> "The audiotapes that will be provided to Defense Counsel are 'dubbed' from the CD-ROM".

Ex Parte - 2

## GOVERNMENT'S AGENT TESTIMONY

FBI Agent Depodesta testified at trial that after recording the "original" conversations in the memory of the "digital recorder" he at a later time, "plugged a cord to the recording device and it transfers the recording to a CD-ROM or compact disc". See Trial Transcript, page 189, lines 11-14.

## ELECTRONIC COMMUNICATION GOVERNING STATUTE

Chapter 119, Title 18, Section 2518 governs the procedures in which oral communication are intercepted and recorded.

> "The contents of any wire, oral, or electronic communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape, wire, or other comparable device ..."

> "the recording ... shall be done in such a way as to protect the recording from editing or other alteration..."

> "They shall not be destroyed ... and in any event shall be kept for ten years ... " Title 18, U.S.C. 2518(8)(a).

## EVIDENCE SHOWING THAT THE "ORIGINAL" COPIES OF THE RECORDINGS ARE STORED AWAY IN SSF 1544

The "original" copy of the March 25, 2002 recording for which the Government claimed they did not record because the equipment was left off by mistake was inventoried in SSF 1544 with serial number 201-2002-CE-000442. See EXHIBIT "AA", Paragraph 4. The "original" disc is "41 minutes in length". The inventory of the "original" disc was done by Special Agent Daniel Dick, witnessed by Michael Newberg, supervised by Glenn

Westlund, all agents of the United States Secret Service. See EXHIBIT "BB".

In fact, all "original" copies of the recordings in the Government's criminal case against Movant are inventoried in SSF 1544 following this same procedure.

1. The "original" copy of the March 24, 2002 phone conversation "10 minutes in length, has been inventoried on SSF 1544 serial number 201-2002-CE-000443". EXHIBIT "AA", paragraph 3. Also see EXHIBIT "CC".

2. The "original" copy of the March 21, 2002 conversation serial number 2001-2002-CE-000446." EXHIBIT "AA", paragraph 5. Also see EXHIBIT "DD".

Even the "original" copy of the video recording of the events that occurred the day Movant was arrested - video that wasnever disclosed in it's "original" form - was inventoried on SSF 1544 with serial number 201-2002-CE-000454. EXHIBIT "EE".

## ARGUMENT

### The Recording

The Government's criminal case against Movant cannot stand up to the test of American jurisprudence if they disclosed the "original" copies of the recorded evidence in SSF 1544 as are required by Brady v. Maryland, Supra. In their attempt to deny Movant his Due Rights to the copy of the "original" recorded evidence in SSF 1544, the prosecutors intentionally misled the Court about the existance of the "original" recordings.

There are two problems with the prosecutor's reasons that they provided to the Court for not disclosing the March 25, 2002 informant's body wired recorded conversation, and all recorded conversations, and the recording equipment.

1. The method the Prosecutors described to the Court about the procedure they used to gather the recorded evidence violates all prongs of the governing statute, 18 U.S.C. 2518(8)(a).

a) The Statute calls for:

> "The contents of any wire, oral, or electronic communication intercepted ... if possible, be recorded on tape, wire, or other comparable device."

The Government told the Court that:

> "The tape recorder is actually a digital recorder which burns recorded conversations directly onto a CD-ROM. When conversations are recorded on the CD-ROM, they are automatically erased from the digital recorder, and the CD-ROM itself becomes the evidence."

The clause "or comparable device" is in place so the statute would be flexible to move with the changing technology so Congress would not have to reconvene every time the technology changes. Recording a conversation directly to a CD-ROM would be in full compliance with the statute, as the CD-ROM would take the place as a "comparable device".

The "digital recorder" as the Government described to the Court could only become a "comparable device" as applied to the Statute if and only if the device with the "original" conversation stored in it's memory was preserved. But, according

to the Government, after they recorded the conversation in the memory of the device, at a later time they "plugged a cord to the recording device and it transfers the recording to a CD-ROM or compact disc". Then the conversations "are automatically erased from the digital recorder, and the CD-ROM itself becomes the evidence".

The Government did not preserve the digital recorder with the content of the conversation stored in it's memory, They did not record the conversation directly on a tape, wire, or other "comparable device" like a CD-ROM or a compact disc. There was absolutely nothing special about the investigation of Movant why the Government could not use one of the recording devices as specified in the Governing statute.

b). The Statute calls for:

"The recording ... shall be done in such a way as to protect the recording from editing or other alteration ..."

FBI Agent DePodesta testified that after the conversations were recorded in the digital recorder, he at some later time:

"plug a cord to the recording device and it transfers the recording to a CD-ROM or compact disc".

The Statute strictly forbids this method of collecting recorded evidence. Once the agents heard the content, they could have easily guaranteed that the conversation would not transfer over to a "CD-ROM or compact disc" if the conversation was not helpful to their case. This method of collecting recorded

evidence allows for nefarious acts, which was forseen by Congress
when they enacted the Statute that requires a method that would
protect against "editing or other alteration".

c). The statute calls for:

> "They shall not be destroyed ... and in any
> event shall be kept for ten years ..."

This was not done in the Government's criminal case against
Movant. The Government did not use a "comparable device" to
record the conversations. They did not preserve the "digital
recorder" with the "original" conversations stored in it's
memory. They did not record the conversations directly onto a
CD-ROM or a compact disc. In fact, they admitted that they
"erase" (destroyed) the "original" recorded conversation that
was in the memory of their digital recorder and:

> "The audiotapes that will be provided to
> defense Counsel are dubbed from the CD-ROM".

CD-ROMS which were not the "original" recordings, which
were duplicated in violation of 18 U.S.C. 2518(8)(a) and 2517
(1), (2), and (3), which allows for duplications.

2). The Government reason they gave to the Court in their
motions for the Court to deny Movant access to the recording
device and ultimately the recordings themselves was a total
misrepresentation of the truth. The testimony of FBI agents,
mainly FBI Agent DePodesta about the method they applied in
gathering the recorded evidence was a total misrepresentation
of the truth.

The prosecutors, FBI agent DePodesta, and Secret Service Special Agent Daniel Dick conspired together to mislead the Court to deny Movant access to the recording device and ultimately the recorded evidence themselves.

The attached exhibits showed that none of the electronically gathered evidence in Movant's case were recorded into the memory of a "digital recorder", then automatically "erased" from the memory of that device. The agents did not leave the recording equipment "off by mistake". Agents of the Federal Law Enforcement Agencies are quite aware of the procedures of Chapter 119, Sections 2518(8)(a), 2517(1), (2), and (3) and would not have gathered the recorded electronic evidence in the manner described by the Government to the Court. All recorded evidence in Movant's case were done in the manner prescribed by the Statute. The "original" copies were duplicated according to the Statute and placed back into SSF 1544 to be maintained for ten years.

The duplicate copy of the March 25, 2002 recording was 41 minutes in length. The prosecutors made a copy of this duplicate for disclosure and made sure that the copy was blank because the 41minutes of recording that was on the duplicate would have been devestating to their case against Movant.

The integrity of all the recordings in Movant's case are now in question. Movant did not receive a fair trial when he did not have access to the "original" recordings, or the recording equipment because the prosecutors and the Federal agents lied to

the Court about the existance of the "original" recorded
conversations contained in SSF 1544.

### The Recording Equipment

Movant was a student in the Electrical Engineering Department
at the University of Illinois at Chicago at the time of his
arrest. Movant has taken many classes in the design and fabri-
cation of micro-chips. The price for a micro-chip at a local
Radio Shack store that could have recorded a 30 second conversation
was about $20 in March 2002 when Movant was arrested, and was
about one inch by two inches in dimension. At this price and size,
it would have cost the Government $1640 to be able to record a
41 minute conversation in the memory of their device and the
size would have to be about 82 times the size of the Radio Shack
Chip, which is hardly a concealing device.

In reality, the Government had agreed to disclose the
recording device only to realize later that they had told the
Court that they had used some cold war James Bond high tech
gaggetry in the form of a Super "digital recorder" when in fact
they had used a simple surveillance tape recorder, which a
disclosure would have made apparent.

The Government wanted the recording equipment shrouded
from the Court and the Jury and was willing to do anything in
their power to accomplish that. Even to offer false and misleading
information to the Court and the Jury at trial, in which they did.

## CONCLUSION

The Government has shouted National Security to help deny Movant the recording device. They allowed their Confidential Informant to have access to the recording device to take out in the field, but would not allow a sitting Jury to look at that same device.

Movant moves this Honorable Court to exercise it's Supervisory authorities pursuant to 28 U.S.C. 2106, and in the interests of Justice to take custody of SSF 1544 and the recording device that was used to record the recorded evidence which are stored in SSF 1544.

The Court can make it's own finding as to the truthfulness of the prosecutor's claim that the recording device used was actually a high tech "digital recorder" or a simple Surveillance Recorder. This can be done without disclosing the device if the Court feels it is in the interest of National Security not to disclose the device.

By misleading the Court about the existance of the "original" recorded evidence on SSF 1544, the Government has proven that they will go to any extreme to shroud the recorded evidence from the Court and Movant. The integrity of the recorded evidence can only be maintained if they are in the Court's custody. If the Jury had the opportunity to hear the "original" recorded evidence in SSF 1544 in their full context, they would not have convicted

Movant of the charges the Government brought against him. If
the Jury would have heard the March 25, 2002 CI's recorded
conversation that the Government claims they did not record,
they would have heard the informant literally crying over his
cellular phone begging Movant to please give him the counter-
feit money so he could use it to buy cocaine from his own source
that he set up in the parking lot at Naragansett and Diversey in
Chicago to rip off so he could sell the cocaine himself to pay
off his debt he had with the Mexican Mafia.

When Movant refused to give the CI the counterfeit money
and left the location, the Jury would have heard on the March
25, 2002 recorded disc the CI calling the agents - as the  cell
phone records showed. Right after the CI called the agents, he
called Movant in which he again plead to Movant to help him out
by giving him the counterfeit money to rip off his own source.
The Jury would have heard Movant again tell the CI he was not
going to help him. The Jury would have heard the CI plead to
Movant to return to the parking lot to speak about the situation
the CI said he had with the Mexican Mafia who was threatening
him.

When the CI convinced Movant to return to the parking lot,
the CI walked up to Movant's car and tossed a black bag in the
car and ran away. Agents then came out of nowhere with guns drawn
and arrested Movant.

This is a classic case of entrapment for which the evidence

in SSF 1544 will prove beyond a shadow of a doubt, and the reason the prosecutors will go to any extreme to shroud this evidence and the recording device from the Court. The Court should take immediate custody of SSF 1544 and the recording device until Movant's §2255 motion is resolved.

WHEREFORE, Movant prays that this Honorable Court grant this motion or any relief the Court deems fair and just.


Respectfully Submitted,

By:

Donville James, pro-se

Date: 5/15/08


Donville James  #14388-424
FCI Greenville
P.O. Box 5000,  2-B
Greenville, IL 62246

EXHIBIT "AA"

EXHIBIT "C"

ONE (1) SMITH AND WESSON SEMI AUTOMATIC PISTOL MAGAZINE, SILVER IN
COLOR WITH BLACK COLORED BUTT PLATE, HAS BEEN INVENTORIED ON SSF
1544 SERIAL NUMBER 2012002CE000438.

FIFTEEN (15) 9MM ROUNDS, TEN (10) HOLLOW POINT ROUNDS AND FIVE
(5) BALL ROUNDS, HAVE BEEN INVENTORIED ON SSF 1544 SERIAL NUMBER
2012002CE000438.

ONE (1) MAXWELL C45 CASSETTE TAPE CONTAINING A CONSENSUAL TELEPHONE
CALL BETWEEN JAMES DONVILLE AND THE CRIMINAL INFORMANT ON 3/24/02,
10 MINUTES IN LENGTH, HAS BEEN INVENTORIED ON SSF 1544 SERIAL
NUMBER 2012002CE000443.



ONE (1) COMPACT DISC, CONTAINING A RECORDING OF THE CONVERSATION BETWEEN
JAMES AND THE CRIMINAL INFORMANT, ON 3/21/02, APPROXIMATELY 41 MINUTES
IN LENGTH, HAS BEEN INVENTORIED ON SSF 1544 SERIAL NUMBER 2012002CE000446.

ONE (1) XEROX WORKCENTRE M940 COPIER/SCANNER SERIAL #PTO092780, HAS BEEN
INVENTORIED ON SSF 1544 SERIAL NUMBER 2012002CE000457.

ONE (1) COMPAQ C31000 COPIER/ SCANNER SERIAL #5G0ADGZHJB8, HAS BEEN
INVENTORIED ON SSF 1544 SERIAL NUMBER 2012002CE000457.

ONE (1) DELL CPU TOWER DIMENSION XPS D300 SERIAL #BG6DD MODEL MMP,
HAS BEEN INVENTORIED ON SSF 1544 SERIAL NUMBER 2012002CE000457.

ONE (1) QUARTET 12" PAPER CUTTER MODEL 9112, HAS BEEN INVENTORIED
ON SSF 1544 SERIAL NUMBER 2012002CE000457.

ONE (1) LEXMARK BLACK HIGH RESOLUTION STANDARD PRINT CARTRIDGE 12A1970,
HAS BEEN INVENTORIED ON SSF 1544 SERIAL NUMBER 2012002CE000457.

ONE (1) LEXMARK COLOR HIGH RESOLUTION STANDARD PRINT CARTRIDGE 12A1980,
HAS BEEN INVENTORIED ON SSF 1544 SERIAL NUMBER 2012002CE000457.

TWO (2) XEROX BLACK INK CARTRIDGE Y100, HAVE BEEN INVENTORIED ON SSF
1544 SERIAL NUMBER 2012002CE000457.

TWO (2) XEROX CYAN INK CARTRIDGE Y101, HAVE BEEN INVENTORIED ON SSF
1544 SERIAL NUMBER 2012002CE000457.

TWO (2) XEROX MAGENTA INK CARTRIDGE Y102, HAVE BEEN INVENTORIED ON
SSF 1544 SERIAL NUMBER 2012002CE000457.

ONE (1) 1LB BAG OF ALLIANCE STERLING RUBBER BANDS, HAS BEEN INVENTORIED
ON SSF 1544 SERIAL NUMBER 2012002CE000457.

ONE (1) BAG OF PRINTING SCRAPS, HAS BEEN INVENTORIED ON SSF 1544 SERIAL
NUMBER 2012002CE000453.

TWO (2) POLAROID PHOTOGRAPHS, TAKEN BY SA JOHN MCCABE, OF A BLACK BAG
CONTAINING COUNTERFEIT CURRENCY IN THE TRUNK OF TAMEKA ADDISON'S NISSAN
ALTIMA HAVE BEEN INVENTORIED ON SSF 1544, SERIAL NUMBER 2012002CE000452.

THREE (3) POLAROID PHOTOGRAPHS, TAKEN BY MYSELF, OF A BLACK BAG
CONTAINING FIVE (5) FAKE KILOGRAMS OF COCAINE IN THE PASSENGER
SEAT OF DONVILLE JAMES' 2002 CHEVY MONTE CARLO, HAVE BEEN INVENTORIED
ON SSF 1544, SERIAL NUMBER 2012002CE000452.

TWO (2) POLAROID PHOTOGRAPHS, TAKEN BY MYSELF, OF A FIREARM ON THE
FLOORBOARD OF THE DRIVER'S SEAT OF JAMES' 2002 CHEVY MONTE CARLO,

EXHIBIT "BB"

EXHIBIT "D"

**COPY**

| CERTIFIED INVENTORY OF EVIDENCE | SERIAL NUMBER  201-2002-CE-000442 |
|---|---|

| EVIDENCE HELD AGAINST  ☐ SPECIMEN  JAMES DONVILLE | CASE NO.  201-735-0131941-S |
|---|---|
| | OFFICE  CHICAGO FIELD OFFICE |
| | DATE OF INVENTORY  03/25/02    PAGE **1** OF **2** PAGES |

EVIDENCE INVENTORIED BY

DANIEL A. DICKEN     3/25/02
SIGNATURE, SPECIAL AGENT     DATE

MICHAEL J. NEWBERG     03/25/02
SIGNATURE - WITNESS     DATE

REVIEWING SUPERVISOR

GLENN A. WESTLUND     3/25/02
SIGNATURE     DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at: ☐ FSD ☐ CFT.

SIGNATURE - DIVISION     DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW LISTED ITEM WAS RECOVERED FROM AGENT DICKENS OF THE FEDERAL BUREAU OF INVESTIGATION ON 3/25/02.  MARKED FOR IDENTIFICATION: "DD 3/25/02" (SA DANIEL DICKEN | |
| 1 | 03/25/02 | 1 | COMPACT DISC, APPROXIMATELY 41 MINUTES IN LENGTH.  COMPACT DISC IS CONTAINED IN A JEWEL CASE. | NO VALUE |
| | | | TOTAL ──> | NO VALUE |

UNITED STATES SECRET SERVICE

SSF 1544 (03/88)

FINAL
AM

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

0165

**EXHIBIT "CC"**

EXHIBIT "F"

COPY

| CERTIFIED INVENTORY OF EVIDENCE | SERIAL NUMBER 201 2002 CE 000443 |
|---|---|

| EVIDENCE HELD AGAINST ☐ SPECIMEN | CASE NO. 201-735-0131941-S |
|---|---|
| JAMES DONVILLE | OFFICE CHICAGO FIELD OFFICE |

EVIDENCE INVENTORIED BY

DANIEL A. DICK          3/25/02
SIGNATURE - SPECIAL AGENT          DATE

| DATE OF INVENTORY 03/25/02 | PAGE 1 OF 2 PAGES |
|---|---|

REVIEWING SUPERVISOR :

GLENN R. WESTLUND          1/25/02
SIGNATURE          DATE

MICHAEL J. NEWBERG          03/25/02
SIGNATURE - WITNESS          DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:   ☐FSD   ☐CFT.

_____          _____
SIGNATURE - DIVISION          DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| | | | THE BELOW LISTED ITEM WS RECOVERED FROM AGENT DEPODESTA OF THE FEDERAL BUREAU OF INVESTIGATION ON 3/25/02. MARKED FOR IDENTIFICATION: "DD 3/25/02" (SA DANIEL DICK). | |
| 1 | 03/24/02 | 1 | CASSETTE TAPE MAXWELL C45, A SIDE LABELED "3/24/02 JAMES DONVILLE, 603PM-613PM COOPERATING WITNESS," B SIDE LABELED "CASE #201-735-131941-S" | NO VALUE |
| | | | TOTAL ——> | NO VALUE |

UNITED STATES SECRET SERVICE          SSF 1644 (03/88)

**FINAL**
**AM**

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

0169

EXHIBIT "DD"

EXHIBIT "E"

COPY

| CERTIFIED INVENTORY OF EVIDENCE | SERIAL NUMBER |
|---|---|

201 2002 CE 000446

| EVIDENCE HELD AGAINST | ☐ SPECIMEN |
|---|---|

JAMES DONVILLE

**CASE NO.**
201-735-0131941-S

**OFFICE**
CHICAGO FIELD OFFICE

**DATE OF INVENTORY**
03/25/02    PAGE 1 OF 2 PAGES

EVIDENCE INVENTORIED BY

DANIEL A. DICK    03/25/02
SIGNATURE - SPECIAL AGENT    DATE

MICHAEL J. NEWBERG    03/25/02
SIGNATURE - WITNESS    DATE

**REVIEWING SUPERVISOR**

GLENN R. WESTLUND    3/25/02
SIGNATURE    DATE

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:    ☐ FSD    ☐ CFT.

SIGNATURE - DIVISION    DATE

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| 1 | 03/25/02 | 1 | THE BELOW LISTED ITEM WAS RECOVERED FROM AGENT DEPODESTA OF THE FEDERAL BUREAU OF INVESTIGATION ON 03/21/02.<br><br>MARKED FOR IDENTIFICATION: "DD 03/21/02" (SA DICK).<br><br>COMPACT DISC, WHITE IN COLOR, LABELED WITH "CASE #201-735-131941-S", DATED 03/21/01 CONTAINED IN A JEWEL CASE. | NO VALUE |

TOTAL ——→    NO VALUE

UNITED STATES SECRET SERVICE

SSF 1544 (03/88)

(A) ORIGINAL WITH SIGNATURES TO CASE FILE
(B) 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
(C) 1 COPY TO ADMINISTRATIVE FILE 710.101
(D) 1 COPY TO WORK FILE

FINAL
TM

0141

EXHIBIT "EE"

**COPY**

| CERTIFIED INVENTORY OF EVIDENCE | SERIAL NUMBER<br>201 2002 CE 000454 |
|---|---|

| EVIDENCE HELD AGAINST          ☐ SPECIMEN | CASE NO.<br>201-735-0131941-S |
|---|---|
| JAMES DONVILLE | OFFICE<br>CHICAGO FIELD OFFICE |

| EVIDENCE INVENTORIED BY | | DATE OF INVENTORY<br>03/25/02 | PAGE  1  OF  2  PAGES |
|---|---|---|---|
| MICHAEL J. NEWBERG<br>SIGNATURE - SPECIAL AGENT | 03/25/02<br>DATE | REVIEWING SUPERVISOR | |
| DANIEL A. DICK<br>SIGNATURE - WITNESS | 3/25/02<br>DATE | GLENN R. WESTLUND<br>SIGNATURE | 3/25/02<br>DATE |

I certify the evidence described in the page(s) of this inventory, not otherwise disposed of per attached documentations, was verified for final retention at:   ☐FSD   ☐CFT.

| SIGNATURE - DIVISION | DATE |
|---|---|

| ITEM NO. | DATE RECEIVED | QUANTITY | DESCRIPTION OF EVIDENCE | VALUE |
|---|---|---|---|---|
| 1 | 03/25/02 | 1 | THE BELOW LISTED ITEM WAS PRODUCED BY AN FBI SA ON 03/25/02 DURING A SURVEILLANCE/ARREST OPERATION.   THIS ITEM WAS TRANSFERRED TO SA ROBYN FIELD OF THE USSS CHICAGO FIELD OFFICE ON 03/25/02.<br><br>MARKED FOR IDENTIFICATION: "DD 03/25/02" (SA DICK).<br><br>MAXWELL MINI DIGITAL VIDEO CASSETTE IN CASE LABELED "JAMES REVERSE BUY/BUST 03/25/02" | NO VALUE |

|  | TOTAL ⟶ | NO VALUE |
|---|---|---|

UNITED STATES SECRET SERVICE

SSF 1544 (08/86)

FINAL
TM

[A] ORIGINAL WITH SIGNATURES TO CASE FILE
[B] 1 COPY TO REMAIN WITH EVIDENCE AT ALL TIMES
[C] 1 COPY TO ADMINISTRATIVE FILE 710.101
[D] 1 COPY TO WORK FILE

0169