**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DONVILLE JAMES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) No.  08 C 1416 |
| | )        02 CR 278 |
| **UNITED STATES OF AMERICA,** | ) |
| | ) **Wayne R. Andersen** |
| **Defendant .** | ) **District Judge** |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on the petition of Donville James, as a prisoner in federal custody, to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  For the reasons set forth below, the Court denies the petition.  Also before the Court are Petitioner's motion for leave to amend the habeas petition and motion to take custody of files and recording device.  For the following reasons, these motions are denied.

**BACKGROUND**

In March of 2002, Petitioner engaged in a narcotics transaction with a FBI cooperating informant ("CI") named Allan Dubon, who was working in an undercover capacity.  Over the course of several recorded conversations, the CI and Petitioner agreed that Petitioner would provide the CI's alleged cocaine source with counterfeit United States currency in return for powder cocaine.  Under heavy law enforcement surveillance, Petitioner met the CI in a parking lot to carry out the deal. After Petitioner showed the CI a bag of counterfeit money, the CI delivered to Petitioner a quantity of simulated cocaine.  Agents then arrested Petitioner, and he provided a detailed written confession of the plan to acquire cocaine from the CI's source in exchange for counterfeit money.  Petitioner's handwritten statement explained that he planned to

buy 15 kilograms of powder cocaine with counterfeit currency and that he planned to give some of the drugs to a member of the Gangster Disciples from whom he had purchased $100,000 of counterfeit currency.  Petitioner orally gave agents consent to search his apartment, where they uncovered additional counterfeit currency and various pieces of counterfeit-making equipment, including a computer, two scanners, rubber bands, and a paper cutter.  Agents additionally recovered from Petitioner's girlfriends car, which was present at the attempted transaction, a black bag containing $87,430 in counterfeit currency along with black pieces of cut paper.

A grand jury indicted and charged Petitioner on three counts: knowingly attempting to possess with intent to distribute a controlled substance, namely powder cocaine in excess of five kilograms, in violation of 21 U.S.C. 846 (Count One); carrying and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924(c)(1)(a)(I) (Count Two); and possessing, concealing, and counterfeiting obligations of the United States, namely Federal Reserve notes, totaling $87,430, in violation of 18 U.S.C. § 472 (Count Three).

The Petitioner pled not guilty. Following a five-day trial before this Court, the jury found Petitioner guilty of all three counts on September 10, 2002.  On May 31, 2005, this Court sentenced Petitioner to 151 months on Counts One and Three, to run concurrently, and 60 months on Count Two, to run consecutively to Counts One and Three.  On July 15, 2005, this Court issued an amended sentencing judgment to clarify that Petitioner was to be sentenced to a total of 211 months.

Petitioner appealed his conviction and sentence on July 14, 2005, raising six claims: (1) that the district court erred when it allowed an FBI agent to testify about prior drug transactions between CI and Petitioner because such statements were hearsay, (2) that these statements are further inadmissible under the Sixth Amendments confrontation clause because he had no

2

opportunity to cross-examine the CI, and are inadmissible as evidence of prior bad acts, (3) that

the district court violated the Federal Rules of Criminal Procedure 16(a)(1) when it failed to

compel the government to produce the non-functioning recording device worn by the CI on the

day of the alleged transaction, (4) that the district court failed to ensure that Petitioner knowingly

and voluntarily waived his right to counsel during sentencing proceedings, (5) that sentencing

under the advisory guidelines violated Petitioner's Sixth Amendment right to trial by jury

because the district court improperly based its calculations on a quantity of drugs that was not

found by a jury beyond a reasonable doubt, and finally, (6) that his sentence was unreasonable

because the district court failed to account properly for the factors listed in 18 U.S.C. § 3553(a).

On June 4, 2007, the Seventh Circuit affirmed his conviction and sentence in *United States v.*

*James*, 487 F.3d 518 (7th Cir. 2007). Petitioner then filed this motion to vacate his sentence

under 28 U.S.C. § 2255 on March 10, 2008.

## STANDARD OF REVIEW

Collateral relief under 28 U.S.C. § 2255, the federal habeas corpus statute, is only

available in those limited situations when there exists "an error of law that is jurisdictional,

constitutional or constitutes a fundamental defect which inherently results in a complete

miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991). A *pro se*

petitioner can establish a valid claim of error if "any set of facts consistent with the complaint

would give him a right to recover, no matter what the legal theory." *Small v. Chao*, 398 F.3d

894, 898 (7th Cir. 2005).

Although within the Seventh Circuit "*pro se* complaints are to be liberally construed,"

there are circumstances in which a Court may deny a § 2255 petition without a hearing.

*McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Namely, when "the

3

allegations… are unreasonably vague, conclusory, or incredible, or if the factual matters raised by the motion may be resolved on the record before the district court." *Rodriguez v. United States*, 286 F.3d 972, 986 (7th Cir. 2002) (quoting *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th cir. 1992)).

## DISCUSSION

### I.    Petitioner's Procedurally Barred Claims

Petitioner cannot raise non-constitutional claims in a habeas petition if they were not raised on direct appeal, unless Petitioner can show changed circumstances of fact or law. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Neither can Petitioner raise constitutional claims that he failed to bring on direct appeal unless petitioner can "demonstrate cause for the procedural default as well as actual prejudice from the failure to appeal." *Barker v. United States,* 7 F.3d 629, 632 (7th Cir. 1993). Thus six of Petitioner's claims, including five constitutional ones, are procedurally barred from being raised in a collateral § 2255 habeas petition.

### A.    Petitioner's Non-Constitutional Claims

Petitioner claims that the government violated a requirement to preserve original recordings for ten years, under 18 U.S.C. § 2518(8)(a), 18 U.S.C. § 2517(1), (2), (3) and 18 U.S.C. § 2511(2)©. However, a failure to raise non-constitutional claims on direct appeal flatly bars them from being raised in a habeas petition, absent a showing of changed circumstances of fact or law. *Belford*, 975 F.2d at 313; *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). A § 2255 habeas petition is not a substitute for direct appeal. *Olmstead*, 55 F.3d at 319. Petitioner has not argued that there has been a change in either the facts or the law regarding this claim. Therefore, Petitioner's claim that the government violated the preservation

4

requirement is procedurally barred and his motion for the Court to take custody of the secret

service file and recording device is denied.

### B.     Petitioner's Constitutional Claims

Petitioner raises five new constitutional claims that he was denied due process of law.

Petitioner claims that his due process rights were denied by the government's suborned perjury,

the perjury of the government's CI at the Grand Jury indictment, the government's use of false

testimony to suppress material evidence, and his entrapment by the government.  Petitioner also

brings a claim that it was legally impossible for him to have attempted to buy drugs, and that he

was legally incapable of so doing.  All of these claims are procedurally barred.

Mindful of the importance of "finality, comity, and the orderly administration of justice,"

federal district courts review of "procedurally defaulted constitutional claim[s] in a petition for

habeas corpus is limited."  *Dretke v. Haley*, 541 U.S. 386, 388 (2004).  Constitutional claims that

Petitioner did not bring on direct appeal cannot be subsequently raised in a § 2255 collateral

attack unless petitioner can "demonstrate cause for the procedural default as well as actual

prejudice from the failure to appeal."  *Barker,* 7 F.3d at 632.  Federal courts adhere to this

doctrine not on statutory or constitutional grounds, but "to conserve judicial resources and to

respect the laws important interest in the finality of judgments."  *Massaro v. United States*, 538

U.S. 500 (2003).

A Petitioner may ordinarily satisfy the cause requirement by demonstrating that he

received ineffective assistance of counsel in his appeal.  *United States v. Taglia*, 922 F.2d 413,

418 (7th Cir. 1991).  However, to satisfy cause in this manner, the attorney on direct appeal must

have also served as Petitioner's trial counsel. *Velarde v. United States*, 972 F.2d 826, 827 (7th

Cir. 1992) (citing *Taglia*, 922 F.2d at 418 ("trial counsel . . . can hardly be expected to challenge

on appeal his own ineffectiveness at trial"). Because Petitioner had different attorneys representing him in these two proceedings, he fails to satisfy the cause requirement with an ineffective assistance of trial counsel argument. Petitioner has not given alternative arguments to demonstrate cause, so those constitutional claims that he failed to raise on direct appeal are now barred.

Even if Petitioner had successfully demonstrated the cause for his failure to raise his constitutional claims on appeal, he still fails to satisfy the prejudice requirement. In order to show prejudice, the Petitioner "must show that there is a reasonable probability that, but for the counsels unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In reviewing whether counsels alleged errors prejudiced Petitioner, the court must grant a "strong presumption of reliability to the original verdict." *Id.* at 696.

Given the record, counsels failure to raise these claims on direct appeal does not sufficiently undermine confidence in Petitioner's conviction, as required by *Strickland*. The record provides substantial evidence of Petitioner's guilt, including: (1) his written confession, (2) recorded conversations between Petitioner and the CI discussing plans to acquire cocaine with Petitioner's counterfeit currency, (3) testimony from government agents who surveilled Petitioner's meeting with the CI in which Petitioner showed the CI a bag of counterfeit money, and the CI retrieved cocaine and brought it to Petitioner's car, (4) $87,000 in counterfeit currency recovered from a bag in Petitioner's girlfriends car, and (5) substantial counterfeiting equipment and counterfeit currency recovered from Petitioner's apartment. The issues Petitioner

would have liked his appellate counsel to raise on direct appeal are not sufficient to counter the quantity of damaging evidence contained in the record.

Petitioner simply fails to demonstrate how appellate counsel's failure to raise specific claims, even if it had been error, resulted in prejudice against him. Petitioner has not demonstrated how any of the claims he raised against his appellate counsel's performance could have affected the outcome of his trial in light of the damaging evidence in the record. Therefore, Petitioner's claims are procedurally barred for failure to establish cause and prejudice for not raising these constitutional claims on direct appeal.

## III.    **Petitioner's Ineffective Assistance of Counsel Claims**

Petitioner's remaining claims assert violations of his Sixth Amendment right to the effective assistance of counsel. The Supreme Court has held that "ineffective-assistance-of-counsel claim[s] may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro*, 538 U.S. at 504. However, Petitioner's claims simply catalogue his *post hoc* disagreements with the judgments and strategic decisions of his lawyers and do not establish that Petitioner was denied a fair trial. Petitioner's claims fail to either overcome the strong presumption that an attorney's performance is reasonable or to establish that the outcome of his trial would have been different absent the purported deficient performance.

### A.    **Legal Standard of Review**

*Strickland* created a two-prong test to govern claims of ineffective assistance of counsel. In order to prevail on this claim, Petitioner must establish both that his attorneys' representation fell below an objective standard of reasonableness (the "performance" prong), and that but for his attorneys' errors, there is a reasonable probability that the result of the proceedings would

have been different (the "prejudice" prong) . *Strickland*, 466 U.S. at 694-95.  Petitioner's failure to establish either prong of the test will be fatal to the entire claim.  *Chichakly v. United States*, 926 F.2d 624, 630 (7th Cir. 1991).

To satisfy the performance prong, first "the [Petitioner] must identify the specified acts or omissions that form the basis for his claim."  *United States v. Moya-Gomez*, 860 F.2d 706, 763-64.  Once they are identified, the Court must then "determine, in light of all the circumstances, if the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  In reviewing counsel's performance, this Court must be "highly deferential,"  *Id.* at 689, and "begin[] with the strong presumption that the [Petitioner's] attorney rendered adequate representation of his client."  *United States v. Meyer*, 234 F.3d 319 (7th Cir. 2000) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

The nature of trial advocacy and the wide range of acceptable performance indicate that counsel's "strategic choices . . . are virtually unchallengeable."  *Strickland,* 466 U.S. at 690.  It is not the Courts role to "grade counsels performance,"  *Id.* at 697, or to "take up the role of Monday morning quarterback."  *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).  The Court must indulge every "possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight."  *Taglia*, 922 F.2d at 417-18.

As to the prejudice prong, the Court begins with the presumption that no prejudice results from any errors committed by counsel.  *United States ex rel. Partee v. Lane*, 926 F.2d 694, 700 (7th Cir. 1991).  If the record supports a finding of substandard performance, the Court must determine whether there is "a reasonable probability that, but for counsels unprofessional errors, the result of the proceedings would have been different."  *United States v. Starnes*, 14 F.3d 1207,

8

109-10 (7th Cir. 1994). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

In evaluating the prejudice prong, the Court must assess whether the deficient performance actually deprived defendant of a fair trial, not merely whether the effect of counsels performance was outcome determinative to the case. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). *Strickland* requires a higher showing than "that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693.

**B.    Application of Legal Standard**

Since Petitioner's failure to establish either prong of the test will be fatal to the entire claim, *Chichakly*, 926 F.2d at 630, if one of the prongs is unsatisfied by a claim, the Court will decline to discuss the merits of the other.

**1.    Failure to Object to Transcripts**

Petitioner's first ineffective assistance claim derives from what he characterizes as "manipulation" by the government of transcripts of incriminating phone calls that were played for the jury at trial. Petitioner contends that his counsel should have objected because the final transcripts of the calls were not identical to the early draft transcripts the government had provided to defense counsel. Petitioner fails to establish that his attorneys decision not to object to the minor differences between the draft and final transcripts ran afoul of *Strickland*s performance prong. In a post-trial letter exchange between Petitioner and one of his trial attorneys, counsel affirmed that they reviewed all the pertinent materials and made the affirmative judgment that there was no basis for objection. Petitioner's claim simply reflects a disagreement with his attorneys professional judgment, but does not show that this decision was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

9

Therefore, Petitioner's habeas claim for ineffective assistance of counsel due to counsels alleged failure to object to the transcripts is denied.

### 2. <u>Failure to Move to Quash Indictment Claims</u>

Petitioner makes three substantially identical claims derived from the fact that none of Petitioner's attorneys moved to quash the indictment on the basis that the government suborned perjury before the grand jury.  To support this claim, Petitioner interprets certain of the recorded conversations between him and the CI as proof that Petitioner was planning to take part in the proceeds of the robbery of cocaine from the CI's source, but not to actually purchase cocaine from him.  According to this interpretation, prosecutors suborned perjury when the CI told the grand jury that the plan was for Petitioner to buy cocaine from the CI's source.

However, Petitioner does not satisfy *Strickland*s performance prong because he does not show how his lawyers failure to file a motion to quash the indictment was legally unreasonable; Petitioner merely shows why he disagrees with this strategic decision.  A motion to quash would have been meritless because the recorded conversations between Petitioner and the CI supported the CI's grand jury testimony.  Furthermore, as a matter of law, the distinction between Petitioner acquiring the cocaine via purchase or robbery is immaterial, as the charge only required proof of attempting to possess the cocaine with the intent of distributing it.  See Seventh Circuit Pattern Criminal Jury Instructions, 21 U.S.C. §841(a)(1).  Finally, Petitioner's claim fails *Strickland*'s prejudice prong because the motion to quash the indictment on the grounds that it was based on perjured testimony did not have a reasonable probability of succeeding.  For these reasons, Petitioner's habeas claim on this point is denied.

3.　　**Failure to Bring Entrapment Defense and Related Claims**

Petitioner makes several claims that his trial counsel was ineffective because she did not pursue an entrapment defense.　Specifically, he claims that his counsel should have presented entrapment evidence at trial, called Petitioner and the CI in support of the entrapment defense, requested an entrapment jury instruction, sought a "sentencing entrapment" departure, and finally, that his counsel misled him into believing that she would pursue an entrapment defense. Petitioner further claims that counsels decision to not pursue the entrapment defense constitutes a failure to provide meaningful adversarial testing.

Each of these claims fails because they merely disagree with counsels strategic decisions, which are "virtually unchallengeable" by this Court.　*Strickland,* 466 U.S. at 690.　In reviewing claims of ineffective assistance of counsel, the court does not "take up the role of Monday morning quarterback."　*Id.* at 697.　Moreover, counsel made these strategic decisions in light of the Court's adverse pre-trial entrapment ruling that the entrapment defense was not viable on the proffered facts.　The Court now rejects the entrapment defense argument for a third time, and accordingly, finds counsels performance to have been reasonable.

In light of the Court's overt rejection of a proffered entrapment defense, Petitioner fails to satisfy *Strickland*'s performance prong for an ineffective assistance of counsel claim.　Counsel was wholly reasonable in deciding not to pursue an entrapment defense because this Court had already ruled pre-trial that there was not likely to be a sufficient basis to establish entrapment. In the opinion of the Court, the evidence failed to create even a *prima facie* case of entrapment.

A defendant seeking to argue entrapment must overcome an initial evidentiary burden of producing sufficient evidence that (1) the government induced the crime and (2) the defendant was not predisposed to commit the crime. *U.S. v. James*, 2002 WL 31749174, *4 (N.D. Ill.).

11

The Court found that Petitioner could not meet these burdens and foreclosed Petitioner's counsel from presenting an entrapment defense in opening statements to the jury. For this reason, Counsel was reasonable in deciding to not seek an entrapment jury instruction or a "sentencing entrapment" departure.

Subsequent to the Court's ruling on the pre-trial proffer of the entrapment defense, Counsel also made the strategic, and reasonable, decision not to present entrapment evidence during the trial due to the risk of testimony about Petitioner's prior drug and counterfeit currency transactions with the CI. Counsel's recommendation to Petitioner to not testify was entirely within the wide range of professionally competent assistance based on the benefits of any additional facts Petitioner might add compared to the risks of damaging testimony about Petitioner's previous drug and counterfeit currency transactions. *Strickland*, 466 U.S. at 690. Ultimately, it was Petitioner's decision to waive his right to testify, and this Court questioned Petitioner extensively to affirm that he understood his decision to do so. Petitioner now claims that he only relinquished this right because one of his trial lawyers "promised" to call the CI to testify but then did not. However, there is no evidence to support Petitioner's claim of counsel's trickery or poor performance.

Additionally, Petitioner's claims of failure to bring an entrapment defense do not satisfy *Strickland*'s prejudice prong. Petitioner cannot be prejudiced by counsel's decision to not pursue an entrapment defense when it is clear that this Court would not have allowed counsel to do so. The Court's post-trial ruling that Petitioner failed to make a *prima facie* showing of entrapment means that, even if counsel had introduced entrapment evidence, it was not reasonably probable that the outcome of the trial would have been different. Moreover, pursuing the entrapment

defense could have harmed Petitioner's defense to a significant degree by airing any prior drug and counterfeit currency transactions with which he had been involved.  Therefore, Petitioner's habeas claims for ineffective assistance of counsel due to counsel's failure to present an entrapment defense are denied.

### 4.    <u>Failure to Request CI's Consent-To-Record Form</u>

Petitioner claims that trial counsel was ineffective because she did not request a copy of the form the CI signed authorizing law enforcement to record his conversations with Petitioner. Petitioner reasons that the CI's consent to the FBI to record their conversations was invalid because, at a certain point, the investigation belonged exclusively to the Secret Service and not to the FBI.  Though Petitioner points to 18 U.S.C. § 2511(c) and (d) to support his contentions, these provisions are silent on these points.  Even if the provisions of Title III cited by the Petitioner supported his interpretation, Petitioner makes no showing that, had counsel requested a copy of the signed consent form, there is "a reasonable probability that . . . the result of the proceedings would have been different."  *Starnes*, 14 F.3d at 109-10.  This claim must thus fail.

### 5.    <u>Stipulation Regarding Inspection of Recording Device</u>

Petitioner claims that trial counsel was ineffective in acceding to a stipulation regarding defense inspection of one of the governments recording devices.  This claim fails to satisfy *Strickland*'s performance prong because counsel agreed to the stipulation after Petitioner knowingly waived his right to inspect the device.  Just as with Petitioner's decision not to testify, he made the ultimate decision on the stipulation.  Moreover, there can be no prejudice, as required by *Strickland*, because the Court deemed valid the governments assertion of privilege against disclosure of the recording device, preventing Petitioner from inspecting the device even if he had not waived his right to do so.  Thus, this habeas claim fails.

**6.    Failure to Challenge Legality of 924 Surveillance**

Finally, Petitioner claims that sentencing counsel was ineffective for failing to argue that it would violate "U.S. laws" to impose a sixty-month consecutive sentence based on Petitioner's conviction under 18 U.S.C. § 924(c). This claim is without merit because the statute expressly requires a five-year minimum sentence except for the situation when some other statutory provision requires an even higher sentence than that articulated in 924(c). Consequently, counsel's performance was reasonable under Stricklands standards, and no prejudice can result from counsel's failure to make a frivolous argument. Therefore, this claim is without merit.

**7.    Motion for Leave to Amend Petition to Include Claim of Ineffective Assistance of Appellate Counsel**

Petitioner's motion to amend his original complaint to include a claim of ineffective assistance of appellate counsel is denied because such an amendment would be futile. Petitioner claims that his appellate counsel was ineffective because he failed to raise specific non-Constitutional and Constitutional issues on direct appeal that Petitioner explicitly requested be raised. After his appellate counsel was assigned to his case, Petitioner wrote a letter to him requesting that he raise five issues on direct appeal: 1) that the prosecutor suborned perjury, 2) that the indictment against Petitioner was obtained because the CI and a government agent perjured themselves, 3) that the government agents entrapped Petitioner into criminal activities, 4) that the government intentionally presented false testimony to the court in order to suppress material evidence and 5) that the government violated federal statutes governing the preservation of original evidence, namely, 18 U.S.C. § 2518(8)(a), 18 U.S.C. § 2517(1), (2), (3) and 18 U.S.C. § 2511(2)(c).

14

As to the first four claims that Petitioner contends his counsel should have raised, Petitioner has failed to satisfy *Strickland*'s requirements of cause and prejudice.

First, as to the performance prong, neither trial counsel nor appellate counsel can be expected to raise baseless claims, and, as stated before, this court cannot second guess strategic issues of professional judgment. The choice of issues to raise on appeal is a matter of strategy. In this case, appellate counsel chose to raise six issues on appeal which he considered to have the best chance of success. He communicated to Petitioner that he would not raise the four claims now at issue because of concerns with local rule 51, governing frivolous claims. We cannot say that his failure to include more issues, which have no ultimate merit for the reasons mentioned earlier in this Opinion, falls below an objective standard of reasonableness. Therefore, Petitioner's claims that his appellate counsel should have raised issues about the government's suborned perjury, his entrapment by the government, and the government's intentional presentation of false testimony are rejected for failing to satisfy the performance prong of *Strickland*.

Secondly, as to the prejudice prong, Petitioner's claims that his appellate counsel failed to raise specific issues on direct appeal do not sufficiently undermine confidence in his conviction in light of the overwhelming evidence on record against him. As noted earlier in this Opinion, the record contains substantial support for Petitioner's conviction, including: (1) his written confession, (2) recorded conversations between Petitioner and the CI discussing plans to acquire cocaine with Petitioner's counterfeit currency, (3) testimony from government agents who surveilled Petitioner's meeting with the CI in which Petitioner showed the CI a bag of counterfeit money, and the CI retrieved cocaine and brought it to Petitioner's car, (4) $87,000 in

counterfeit currency recovered from a bag in Petitioner's girlfriend's car, and (5) substantial counterfeiting equipment and counterfeit currency recovered from Petitioner's apartment.

Finally, Petitioner's non-constitutional claim regarding appellate counsel's failure to raise the preservation of evidence claim also fails to satisfy *Strickland.* Even though appellate counsel did not raise this statutory claim on direct appeal, there is no indication that had Petitioner been able to raise this claim on direct appeal that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694-95. Therefore Petitioner fails to satisfy the prejudice prong of *Strickland* on this claim.

In sum, none of Petitioner's claims against his appellate counsel satisfy *Strickland*'s performance or prejudice prongs. Accordingly, the motion for leave to amend petition is denied.

## CONCLUSION

For the foregoing reasons, Petitioner Donville James petition for habeas corpus pursuant to 28 U.S.C. § 2255 is denied (#1). Petitioner's motion for leave to amend his habeas petition (#12) is denied. Petitioner's motion to take custody of files and recording device (# 14) is denied. This is a final and appealable order, and this case is hereby terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: __July 15, 2008_____

16